IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| Dennis Michael Mclaughlin and ) | |
| Petra Patricia McLaughlin, ) | Case No.05-22855 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| Dennis Michael McLaughlin and ) | |
| Petra Patricia McLaughlin, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary No. 06-2018 |
| ) | |
| U.S. Funds; U.S. Dept. Of Education; ) | |
| Coordinating Board for Higher Education; ) | |
| Sallie Mae Servicing Corp.; ) | |
| Pioneer Credit Recover, Inc.; ) | |
| Missouri Higher Education; ) | |
| Educational Credit Management Corp. ) | |
| ) | |
| Defendants. | |

**MEMORANDUM OPINION**

In this adversary proceeding, Plaintiffs Dennis McLaughlin and Petra Patricia McLaughlin ("Debtors") seek a determination, pursuant to 11 U.S.C. § 523(a)(8), that their student loan debt, owed to the U.S. Dept. of Education ("Education") and to Educational Credit Management Corp.("ECMC") should be discharged for the reason that excepting the debts from discharge would impose upon them an undue hardship. This is a core proceeding of which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and which it may hear and determine pursuant to 28 U.S.C. § 157(a), 157(b)(1) and 157(b)(2)(I). The following constitutes my Findings of Fact and

Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that Debtors have not satisfied their burden of proving that repayment of the debts owed to Education and ECMC would impose an undue hardship upon them and that they are, therefore, excepted from discharge under § 523(a)(8).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Debtors are married and have three grown children, none of whom is currently dependent upon Debtors. Debtor Petra McLaughlin is 51 years old and is unemployed. While raising children, Mrs. McLaughlin attended Drury College and initially sought a degree in Food Service Management; however, when the program was cancelled, she switched her studies to business management and received a B.S. in Business Administration in December 1989.[1] Mrs. McLaughlin financed her education through student loans and owes Education the principal balance as of June 19, 2006 of $19,623.40, plus accruing interest.[2] After receiving her degree, Mrs. McLaughlin substitute taught and sought employment in her field; however, to date, she has not been successful in obtaining a job which would utilize her bachelor's degree.[3] Mrs. McLaughlin testified that her current unemployment is due to a myriad of factors including allergies, a weight lifting limitation, limited employment opportunities near her home and her need to travel to Oklahoma once a month for three days to a week to care for her disabled brother

---

[1] Transcript from the trial hearing held on October 18, 2006 ("Transcript"), p.21, lines 7-15; p. 22, lines 22-25.

[2] Education's Exhibit #1.

[3] Transcript, p. 25, lines 5-22.

and terminally ill mother.[4]

Debtor Dennis McLaughlin is 52 years old and works full time as a fabricator/machinist. Mr. McLaughin attended Columbia College from 1989 to 1994 and then Drury College in 1995, but did not complete the courses necessary to earn a degree.[5] He obtained numerous different loans while attending college with a total principal amount due to ECMC, as of April 20, 2006, of $27,011.42 and a total principal amount due, as of June 19, 2006, to Education of $15,451.81.[6] Mr. McLaughlin is, and has been for approximately the last two years, employed by Modine Mfg. He testified that he earns approximately $16 per hour and that he is at the top of the pay scale in his position.[7] He is paid on a weekly basis and, after examination of his weekly pay statements, he testified that his average net monthly salary through July 2006 was $2,512.[8] Debtors' Schedule I states that Mr. McLaughlin's net monthly salary when the bankruptcy was filed was $2,032.73, and he testified that his net monthly salary had increased approximately $500 since the time of filing.[9] Mr. McLaughlin's pay statements through July 2006 indicate that he regularly earned overtime pay, which is time and a half, and a .25 increase for working third shift. Mr. McLaughlin testified that, due to a recent change in company policy, he would no longer be paid for working overtime, that he would only be working eight hours per day at his

---

[4] Transcript, p. 10, line 10 through p. 23, line 14; p. 27, line 2 through p. 29, line 25; p. 48, lines 9-24.

[5] Transcript, p. 75, lines 5-7.

[6] Education Exhibit #'s 2 and 3.

[7] Transcript, p. 86, lines 17-19.

[8] Transcript, p. 88, lines 9-25.

[9] Transcript, p. 89, line 25 - p. 90, line 9.

regular hourly rate.[10] Mr. McLaughlin testified that neither he nor his wife have filed a tax return since approximately 2000.[11] His reason for not filing tax returns is that he was informed by one of his creditors that any refunds available would be seized to apply to his debt; therefore, he decided not to file.[12]

Debtors' schedule of expenses, Schedule J, filed on October 6, 2005, shows monthly expenses of $2,234. Their answer to Defendant's Interrogatory #18, however, shows monthly expenses of $2,814.[13] Debtors reside in a home owned by Mrs. McLaughlin's mother and, although they indicate in their schedules that they pay rent in the amount of $400 per month, they admit that they do not pay it in the "standard form," that is, they spend approximately this amount each month taking care of the house and the surrounding acres of land.[14] Some of the additional expenses that Debtors identify in their total monthly expenses include $35 per month for pet food and grooming, $60 per month for Debtors' personal grooming needs, $50 per month for birthday and holiday expenses, $100 per month for entertainment/recreation, $40 per month for meals outside the home and $40 per month for cable television.[15]

---

[10] Transcript, p. 102, lines 4-16.

[11] Transcript, p. 90, lines 10-14.

[12] Transcript, p. 90, lines 15-20.

[13] Debtors' Exhibit # 3.

[14] Transcript, p. 8, lines 2-18; p. 32, lines 8-16.

[15] Debtor's Exhibit #3; Transcript, p. 19, line 23 through p. 21, line 6.

II.  DISCUSSION

A.  Applicable Legal Principles on Determination of Undue Hardship

Debtors contend that it would be an undue hardship for them to repay the remaining amounts due on their student loans.  Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtor or her dependents.  The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Ford v. Student Loan Guarantee Found. of Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001);  *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004). In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable, necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 554; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged. *Long*, 322 F.3d at 554.  The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his student loan without reducing what the debtor and his

dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

There is no precise formula for, or statutory definition of, what constitutes a "minimal standard of living." On one end of the spectrum, it is clearly not enough for a debtor simply to demonstrate that payment of a student loan would require a readjustment of his financial situation or a diminution in lifestyle. *Educ. Credit Mgmt. Corp. v. Stanley (In re Stanley)*, 300 B.R. 813, 817 (N.D. Fla. 2003). A debtor is therefore not entitled to maintain the standard of living enjoyed before the filing of the petition. *See Stanley*, 300 B.R. at 817. On the other hand, it is not necessary that a debtor live in abject poverty in order to demonstrate undue hardship and obtain a discharge of student loans. *See Stanley*, 300 B.R. at 818. A minimal standard of living requires that the debtor have sufficient financial resources to satisfy needs for food, shelter, clothing and medical treatment. *Gill v. Nellnet Loan Services, Inc. (In re Gill)*, 326 B.R. 611, 627 (Bankr. E.D. Va. 2005); *see also Myers v. Fifth Third Bank (In re Myers)*, 280 B.R. 416, 421-422 (Bankr. S.D. Ohio 2002) (minimal standard of living includes the following elements: shelter, utilities, food and personal hygiene, clothing, health insurance or ability to pay medical and dental expenses and recreation).

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility. As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assist them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments on the

student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *VerMaas v. Student Loans of North Dakota (In re VerMaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines each factor separately.

### B.  Analysis of the Totality of the Circumstances

#### 1.  Past, Present and Reasonably Reliable Future Financial Resources

The Court must first consider the Debtors' past, present and reasonably reliable future financial resources. Because Debtors pool their income (or have pooled it in the past), and their expenses are drawn from that pooled income, the Court will consider both of Debtors' income (or potential income). *See Sweeney v. Educ. Credit Mgmt. Corp. (In re Sweeney)*, 304 B.R. 360, 362-63 (D. Neb.2002). According to pay stubs and corresponding bank deposits, as of July 2006, Mr. McLaughlin's average, net monthly salary was $2,512, an amount which was understated by about $500 in his Schedule I. Despite the fact that a vast majority of Mr. McLaughlin's pay stubs from 2005 and 2006 indicate that he earned eight or more hours of overtime pay per pay period, he testified, without any supporting documentation or witnesses, that he would no longer be receiving overtime due to a restructuring of the company. He testified that his future pay checks would reflect a straight 40 hour week at his hourly rate of $15.92. According to the testimony of a representative from Mr. McLaughlin's employer, taken

at a post-trial deposition, Mr. McLaughlin will likely earn one day of eight hours overtime pay per month starting in March 2007 and he did not have an opinion as to how much overtime would be offered after August 2007.[16] Mr. McLaughlin has been with the same company for about two years and has steadily received raises, although he testified that he would not be eligible for any additional raises. He earned an annual gross salary of approximately $40,000 in 2005 and, based on his year to date gross annual income as of July 2006, absent any major changes, he would have made approximately the same annual salary in 2006.[17] Other than the potential decrease in income due to reduced overtime pay, there is no reason to believe Mr. McLaughlin's income will change significantly in the immediate future in either direction. There is no evidence that Mr. McLaughlin is underemployed or that he is likely to obtain a promotion or a raise in the immediate future. Neither is there any evidence that he will not be continuously employed in this position.

According to the evidence before the Court, Mrs. McLaughlin's current unemployed is due primarily to her moral obligation to visit her terminally ill mother in Oklahoma each month for a few days to a week. She also testified that she has allergies which cause her discomfort, that she has a weight lifting restriction of 30 pounds and that there are no jobs for someone with her educational background in their geographic area. The Court is not convinced that Mrs. McLaughlin's stated health issues are significant enough to prevent her from obtaining some

---

[16] See ECMC's post-trial brief wherein it sites a deposition, taken on December 6, 2006, of Dan George, an employee of Modine. The Court was not provided a copy of said deposition, however, Debtors, in their post-trial brief, filed subsequent to ECMC's, did not dispute the information ECMC recited regarding Mr. George's testimony.

[17] Transcript, p. 79, lines 2-4; ECMC's Exhibit #4, pay period dated July 14, 2006.

type of employment and thus finds that she is not maximizing her income. At a minimum, she could obtain part time employment until her mother passes away, which would allow her to contribute to the household income while still being able to visit her mother once a month. Even at minimum wage, Mrs. McLaughlin has potential to make a financial contribution to the household income.[18] Upon her mother's passing, which Mrs. McLaughlin testified would unfortunately occur within one to two years, she could then transition to full time employment and feasibly contribute financially to the household income for another 10 to 15 years.

### 2. Debtors' Reasonable Necessary Living Expenses

The evidence raises several issues about Debtors' living expenses. Their Schedule J shows expenses of $2,234 per month. Their response to interrogatories reflect a different, significantly higher monthly expense of $2,814. After assessing the evidence, the Court has determined that many of their itemized monthly expenses and added monthly expenses must be adjusted or denied entirely as unnecessary or unreasonable. For the sake of clarity, the Court will work primarily from Debtors' Schedule J and incorporate differences included in their interrogatories regarding expenses as needed. First, Mrs. McLaughlin testified that they have never paid her mother $400 for rent in the "standard way", but rather, that they spend this amount per month to care and maintain the property. The Court acknowledges that Debtors would likely pay this amount, or more, if they were actually paying rent in the "standard way,"

---

[18] The federal minimum wage is $5.15 per hour. If Missouri has a higher minimum wage, Mrs. McLaughlin would be entitled to the higher amount. See ECMC's Exhibit #16. If Mrs. McLaughlin obtained employment on just a half-time basis, at the federal minimum wage, her gross monthly income, before taxes, would be $429.16. Due to the amount of income, very little would be withheld for state and federal taxes. Therefore, even as a part-time employee, she could contribute significantly to the family income.

therefore, the Court is willing to accept Debtors' itemized amount for rent. However, because Debtors' have allowed themselves $400 per month for home maintenance, the Court finds their additional amount of $84.15 for home maintenance repetitive and therefore, unnecessary.

Second, at trial Debtors admitted that health and life insurance are wage deductions which are taken out of Mr. McLaughlin's pay check each pay period, thus a total of $176 may be deducted from the itemized monthly expenses. Debtors also have dental and vision insurance, both of which are automatically deducted from Mr. McLaughlin's pay checks. In addition to receiving health and dental benefits, Mrs. McLaughlin testified that they spend $300 per month on additional medical and dental expenses and various vitamins, herbs and other natural products that she claims she needs for her allergies and other conditions.[19] She did not, however, present any evidence in the form of documentation from a medical or "naturalpathic" doctor regarding her condition or prescriptions or receipts for the various supplements she requires. The Court finds this expense excessive and will allow a total of $150 for medical/dental expenses as listed on their Schedule J and deny the additional expense contained in their interrogatory response. Mrs. McLaughlin testified that she also controls her medical issues with organic foods which she states is partially the reason that their food expenses were increased by $100 in their interrogatory response, which the Court will allow.

The evidence before the Court raises questions about whether some of Debtors' expenses are necessary and reasonable. For example, Debtors list $40.00 per month for cable television. The Court does not view cable television as necessary to maintain a minimal standard of living and, therefore, finds this expense unnecessary and unreasonable. *See Bott v. Educational Credit*

---

[19] Transcript, p. 13, line 24 through p. 15, line 8.

*Mgmt. Corp.*, 324 B.R. 771, 777 (Bankr. E.D.Mo.2005); *Wardlow v. Great Lakes Higher Education Corp.*, 167 B.R. 148, 151 (Bankr.W.D.Mo.1993).  Mrs. McLaughlin testified that she and her dogs require their nails to be done on a regular basis and Debtors itemize on Schedule J $35 per month for pet/vet expenses and list an additional $60 per month for their personal care in their interrogatory answer.  The Court does not view manicures for either Mrs. McLaughlin or her dogs as a necessary and reasonable expense to maintain a minimal standard of living and will, therefore, reduce the pet/vet expense contained in Schedule J by half and allow an added $30 monthly expense for Debtors' personal care.  The Court is troubled by the excessive expenses listed in Schedule J and their interrogatory response for entertainment costs, eating outside the home, an expense that was never justified by Debtors, and birthday and holiday expenses.  The Court will allow a total monthly expense for entertainment/eating outside the home/misc. expense of $100.  The Court will allow an addition of $50 per month for birthdays and holidays.

      Mrs. McLaughlin also testified that one of their current vehicles, a 1987 Buick with approximately 300,000 miles, has electrical problems.  She testified that the parts required to fix the problems are no longer made and that it is not reliable transportation.[20]  Debtors have added $250 to their monthly transportation expense as savings to purchase a new vehicle at some point in the future.  The record, however, contains no evidence as to the repair costs or the likely monthly replacement costs for the vehicle.  Accordingly, there is no basis on which the Court might make an additional monthly allotment for vehicle replacement costs.

      All of this evidence suggests that the Debtors' monthly expenses as shown on their

---

[20] Transcript, p. 16, line 2 through p. 17, line 23.

Schedule J should be adjusted as follows: a $100 increase in their monthly food expense, an additional expense of $30 for personal grooming, an additional expense for birthdays and holidays of $50, a $176 reduction in health and life insurance expense, $40 for the elimination of the monthly cable expense, a $15 reduction in pet/vet expense and a $100 reduction for the elimination of misc. living expenses. Making these adjustments to their Schedule J, Debtors' monthly expenses are $2078. Comparing that to their average monthly net income of $2,512, Debtors have disposable income of $434 per month with which to make payments on student loans. Additionally, should Mrs. McLaughlin choose to obtain part-time employment, their disposable income would increase by approximately $400 per month.

Both Debtors have multiple student loans which have not been consolidated. Accordingly, the Court must determine whether repayment of the student loans constitutes an undue hardship on a loan-by-loan or debt-by-debt basis. *See Nelson v. Iowa College Aid Comm'n., et al.*, 2005 WL 1320139 (2005) *citing Andresen* 232 B.R. at 136-137. In other words, even if Debtors may not have the ability to make payments on all of their student loans and maintain a minimal standard of living, if they can afford to make payments on some of the loans, those debts would not be dischargeable as imposing an undue hardship on them. A debtor has the burden of proof on this issue. *Ford,* 269 B.R. at 675.

Here, both Education and ECMC produced evidence of what Debtors' estimated monthly payment would be under an Income Contingent Repayment Plan ("ICRP"), available as part of the William D. Ford program. Debtors' combined student loan payment to Education would be between $285 and $400 per month.[21] Debtors' combined student loan payment to ECMC would

---

[21] See Education's Exhibit # 4.

be between $180 and $272 per month.[22]  Thus, Debtors' total monthly payments to student loans under an ICRP could be $465, an amount which is feasible if Mrs. McLaughlin chooses to maximize her income through part time employment.  Additionally, once Mrs. McLaughlin is able to transition to full time employment, Debtors will have sufficient monthly, disposable income to pay an increased amount toward their student loans and still have some discretionary income left over.   There is, therefore, no basis for this Court to make a finding that Debtors are unable to pay any of their student loans.

### 3.  Other Unique Circumstances

The Debtors' age and health are factors which the Court may take into consideration in assessing whether repayment of their student loans would constitute undue hardship.  Debtors are 51 and 52 years old and have approximately a decade of work life remaining.  Mr. McLaughlin suffers from no health problems.  Mrs. McLaughlin testified that her allergies and weight lifting limitation have handicapped her ability to obtain employment, however, there is no medical evidence to corroborate her testimony nor do her limitations stop her from traveling over 900 miles a month to visit and care for her mother, playing golf occasionally or maintaining a household, thus, they should not impede her ability to find some type of employment.  Accordingly, there is no indication that either of Debtors' physical conditions will impose limitations on their ability to earn or unusual stress on their monthly budget.

The Court may also consider Debtors' efforts to repay or negotiate repayment of their student loans.  The record indicates that Mr. McLaughlin has paid approximately $3,400 toward one of his loans and that Mrs. McLaughlin has not made any payments toward her loans.  Mrs.

---

[22] See ECMC's Exhibit 14, Exhibit G.

McLaughlin testified that she was aware of several different payment options being offered, with a total payment for both Debtors of between $400 and $600 per month, however there is no evidence before the Court that Debtors have attempted to incorporate a restructured payment plan into their budget.[23]

Additionally, as previously stated, although Debtors continue to pay taxes through employment withholdings, and in fact may be over withholding thereby reducing their monthly income, they have intentionally neglected to file their tax returns for the last five years. Mr. McLaughlin testified that, although they historically received a tax refund, because he was advised that any refund available could be seized by creditors to pay down their debts, they would simply not file their taxes so that creditors could not get their returns. Thus, in addition to finding that Debtors are not maximizing their income or minimizing their expenses, the Court finds Debtors' actions of intentionally neglecting to file tax returns to spite their creditors, lacking in good faith.

For all of the above reasons, the Court finds that repayment of the Debtors' student loan indebtedness to ECMC and Education would not impose an undue hardship on them pursuant to 11 U.S.C. § 523(a)(8) and it is therefore not dischargeable. It is therefore

ORDERED that the indebtedness owed by Debtors to ECMC and Education not be discharged pursuant to 11 U.S.C. § 523(a)(8).

A separate order will be entered in accordance with Bankruptcy Rule 9021.

---

[23] Transcript, p. 7, lines 6-18.

DATED: January 24, 2004             /s/ Dennis R. Dow
                                                   HONORABLE DENNIS R. DOW
                                                   UNITED STATES BANKRUPTCY JUDGE

Copies to:

Charles F. Johnson
E. Eugene Harrison
N. Larry Bork